# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

JACOB W.,

    Plaintiff,

vs.

LELAND DUDEK,
Acting Commissioner of Social Security,[1]

    Defendant.

No. 24-CV-0016-CJW-KEM

**REPORT AND RECOMMENDATION**

_____

Plaintiff Jacob W. seeks judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Plaintiff argues that the administrative law judge (ALJ) erred by failing to consider Plaintiff's impairments in combination, in weighing a medical opinion, and by failing to develop the record. I recommend **reversing and remanding** the Commissioner's decision.

## I.  BACKGROUND

Plaintiff worked as a pharmacy technician from 2008 to January 2017, when he was 30 years old. AR 47, 80.[2] He filed applications for DI and SSI benefits in June 2021, alleging disability since January 10, 2017, based on bipolar disorder I with psychosis, manic depressive disorder, anxiety, diabetes mellitus, liver disease,

---

[1] Leland Dudek is substituted for his predecessor in accordance with Federal Rule of Civil Procedure 25(d).

[2] "AR" refers to the administrative record filed in this case (Doc. 5).

hypertension, "nonalcoholic serohepatitis," hemochromatosis, asthma, and obesity. AR 10, 80, 199, 226. The Social Security Administration denied his request for benefits on initial review in December 2021 and on reconsideration in April 2022. AR 10, 78, 95. During the initial review, Mark Becker, PhD, completed the psychiatric review technique to determine the severity of Plaintiff's mental impairments, finding he had only mild limitations in interacting with others and his mental impairments were nonsevere. AR 82-83, 89-90. During the reconsideration review, Sarah Fetter, PhD, determined Plaintiff suffered severe mental impairments and evaluated Plaintiff's mental residual functional capacity (RFC).[3] 101-03, 110-12. Dr. Fetter found Plaintiff had moderate limitations in his ability to interact with others and should be limited to superficial social interactions with the ability to work independently as needed. AR 102-03, 111-12. The record also contains a medical source statement from Bryan Netolicky, MD—Plaintiff's treating psychiatrist. AR 883-85. Dr. Netolicky found Plaintiff had moderate to marked limitations in his ability to interact with coworkers and supervisors but provided no additional limitations. *Id*.

Plaintiff requested further review of the Social Security Administration's denial, and the ALJ held an administrative hearing by video in December 2022. AR 10, 33-77. Plaintiff, his mother, and a vocational expert testified at the hearing. *Id*. The ALJ issued a written opinion on February 1, 2023, following the five-step process outlined in the regulations[4] to determine whether Plaintiff was disabled during the relevant time period.

---

[3] RFC means "the most that a claimant can do despite her limitations." *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019).

[4] "During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security . . . listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work." *Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)); *see also* **§ 404.1520(a)(4),**

AR 10-23. The ALJ found Plaintiff suffered from severe impairments of asthma, bipolar disorder (type 1), and anxiety disorder. AR 13. The ALJ recognized that Plaintiff suffered from additional impairments (diabetes mellitus type 2, hypertension, gastroesophageal reflux disease, hyperlipidemia, hereditary hemochromatosis, non-alcoholic steatohepatitis, obesity, and left elbow olecranon) but determined they were nonsevere. AR 13. To aid in steps four and five, the ALJ determined Plaintiff had the RFC to perform work at all exertional levels with the following non-exertional limitations:

> [H]e can tolerate occasional exposure to atmospheric conditions. The claimant can carry out simple instructions and tolerate occasional changes in the work setting. He can tolerate occasional interactions with supervisors, co-workers, and the general public. The claimant cannot perform work with a specific production-rate pace such as assembly line work or work requiring hourly quotas.

AR 16. Based on this RFC, the ALJ found Plaintiff could not perform his past work as a pharmacy technician because the requirements for the job exceeded the RFC for simple work. AR 21. The ALJ found that based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform other work as a garment sorter, cleaner II, or marker. AR 21-22. Thus, the ALJ found Plaintiff not disabled. AR 22.

The Appeals Council denied Plaintiff's request for review on December 8, 2023 (AR 1-3), making the ALJ's decision that Plaintiff was not disabled the final decision of the Commissioner.[5] Plaintiff filed a timely complaint in this court on February 5, 2024 (Doc. 1).[6] The parties briefed the issues (Docs. 7, 9, 10) and the Honorable C.J.

---

**416.920(a)(4)**. The claimant bears the burden of persuasion to prove disability. *Goff*, 421 F.3d at 790.

[5] *See* **20 C.F.R. §§ 404.981, 416.1481**.

[6] *See* **20 C.F.R. § 422.210(c)**.

Williams, Chief Judge for the Northern District of Iowa, referred this case to me for a report and recommendation.

## II. DISCUSSION

So long as substantial evidence in the record as a whole supports the ALJ's decision, a reviewing court must affirm.[7] "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."[8] The court "do[es] not reweigh the evidence or review the factual record de novo."[9] If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision."[10]

Plaintiff argues the ALJ erred by failing to fully consider the combined effects of his impairments, by finding he retained the RFC to perform work at all exertional levels, and by failing to develop the record.

### A. Combined Effect of Plaintiff's Impairments

Plaintiff argues that the ALJ failed to consider the limiting effects of his severe and nonsevere impairments in combination and that the medical evidence corroborates Plaintiff's allegations. Plaintiff fails to explain—other than the general assertion above— how his combined impairments affected his ability to function.[11] An ALJ "properly

---

[7] *Grindley*, 9 F.4th at 627; *accord* **42 U.S.C. § 405(g)**.

[8] *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

[9] *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994).

[10] *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

[11] I note that Plaintiff's nonsevere impairments related to physical and not mental abilities and limitations. As discussed in the following sections, Plaintiff challenges the mental limitations in the ALJ's RFC determination. In addition, Plaintiff mentions subjective complaints in his brief, but he does not appear to challenge the ALJ's assessment of Plaintiff's subjective complaints.

consider[s] the combined effects of [claimant]'s impairments" when the ALJ summarizes the record and discusses each impairment.[12] Here, the ALJ concluded that Plaintiff's impairments—individually and in combination—did not meet or equal a listed impairment. AR 14. In making this determination, the ALJ outlined the medical and other evidence and discussed each of Plaintiff's impairments. AR 14-15. In addition, in making the RFC determination, the ALJ further summarized the evidence in the record and assessed Plaintiff's functional limitations. AR 16-21. As part of that process, the ALJ specifically noted that he considered the impact of Plaintiff's nonsevere impairments. AR 14.

I recommend rejecting Plaintiff's conclusory argument and finding the ALJ properly considered the impact that Plaintiff's impairments had, individually and in combination, on his ability to function.

### B. Medical Opinion Evidence

Plaintiff argues the ALJ improperly weighed the opinion of his treating psychiatrist, Dr. Netolicky, and thus, the ALJ's RFC determination is not supported by any medical evidence.[13] An ALJ must "evaluate the persuasiveness of medical opinions"

---

The ALJ found Plaintiff's subjective complaints were not fully supported by the evidence in the record. AR 17. I find no error with this part of the ALJ's decision.

[12] *Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011) (collecting cases) (rejecting claimant's "conclusory statement" that the ALJ failed to consider her impairments in combination based on the ALJ's "synopsis of [claimant]'s medical records and discussion of each of [her] alleged impairments").

[13] Plaintiff's brief mentions that the ALJ erred in finding Plaintiff could work at all exertional levels. Plaintiff seems to conflate exertional limitations (related to the ability to meet strength demands) with non-exertional limitations (for job demands other than strength). *See* **29 C.F.R. §§ 404.1569a, 416.969a**. Dr. Netolicky's opinion pertained only to Plaintiff's mental RFC and abilities unrelated to strength. Also, Plaintiff does not argue he had physical limitations. Thus, I consider Plaintiff's second argument as a challenge to the weight given to Dr. Netolicky's opinion.

5

considering the following factors: (1) supportability, i.e., "the objective medical evidence and supporting explanations presented by a medical source" in support of his or her opinion; (2) consistency with "evidence from other medical sources and nonmedical sources"; (3) the relationship between the opinion's author and the claimant, such as whether the opinion is from a treating source; (4) whether the medical opinion is by a specialist; and (5) "other factors that tend to support or contradict a medical opinion," such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Social Security Administration's] policies and evidentiary requirements."[14] The first two factors, supportability and consistency, are the most important.[15] The ALJ is required to "articulate how [the ALJ] considered the medical opinions" and "explain how [the ALJ] considered the supportability and consistency factors."[16]

Dr. Netolicky completed a medical source statement, consisting of a two-page checkbox form with written notations. AR 883-85. Dr. Netolicky found Plaintiff had moderate to marked limitations in understanding, remembering, and carrying out complex instructions; interacting appropriately with supervisors and co-workers; and responding appropriately to usual work situations and changes. Dr. Netolicky also found Plaintiff had marked limitations in making judgments on complex work-related decisions. Under the limitations involving instructions and making decision, Dr. Netolicky wrote:

> [Plaintiff's] ability to understand, remember & carry out instructions & his ability to make decisions has historically been even more significantly impaired when he has been in the midst of a manic/psychotic flare up. Such flare ups have occurred <u>repeatedly</u> and intensely over the years, impacting his education and employment.

---

[14] **20 C.F.R. §§ 404.1520c(a), (c), 416.920c(a), (c)**.

[15] **20 C.F.R. §§ 404.1520c(a), 416.920c(a)**.

[16] **20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2)**.

AR 883. For the limitations on social interactions and responding to work situations and changes, Dr. Netolicky noted that Plaintiff "has been unable to hold a job historically, except, for instance, when his father was his manager." AR 884. Dr. Netolicky also wrote: "Full time gainful employment is beyond his grasp, unfortunately," and that while Plaintiff had obtained an associate's degree "after several attempts in 2009," he was not able to obtain his bachelor's degree. *Id*. Under a question about the factors (such as medical signs or laboratory findings) that supported his opinion, Dr. Netolicky wrote:

> [Plaintiff] has required multiple psychiatric hospitalizations over the years due to flares of his Bipolar I Disorder. Any measure of stability now is due to his treatment, support from his family, and the absence of stress induced by attempting to work.

AR 884; *see also* AR 886. Dr. Netolicky also noted that his office had treated Plaintiff for years and that Plaintiff had "demonstrated significant impairment since 2009." AR 884.

The ALJ discussed and weighed Dr. Netolicky's opinion. AR 20. The ALJ considered Dr. Netolicky's relationship and specialization, recognizing he was Plaintiff's treating psychiatrist. The ALJ found Dr. Netolicky's conclusion that Plaintiff could understand, remember, and carry out simple instructions was both supported by Dr. Netolicky's records and consistent with Plaintiff's reported activities and observations made by other medical providers. The ALJ did not find persuasive, however, Dr. Netolicky's opinion that Plaintiff had moderate to marked limitation in his ability to interact with coworkers and supervisors. The ALJ noted that Dr. Netolicky based that portion of his opinion on Plaintiff's subjective claims. The ALJ could properly give less weight to Dr. Netolicky's opinion to the extent it relied on Plaintiff's subjective

7

complaints because the ALJ found the record did not support Plaintiff's statements about the severity and limiting effects of his symptoms (AR 17).[17]

The ALJ also found Dr. Netolicky's opinion was inconsistent with his own treatment records, which is supported by the record. Dr. Netolicky's records from the relevant period (visits on average every two months) show normal mental status examinations during nearly all visits and that Plaintiff was generally doing well during the relevant period. AR 710-35, 847-48, 851, 879-82. Records from other providers also showed normal psychological results during examinations and that Plaintiff reported doing well. AR 322, 773, 809, 818, 909 (able to comprehend and answer appropriately); AR 950 (normal affect, mood, behavior, thought content, and judgment); AR 328, 385, 451, 750, 778, 928, 964 (mood doing well); AR 401 ("He feels his mood is doing fairly well. Stable. Denies feeling down depressed sad"); *but see* AR 345, 442 (mild decrease in affect but mood doing well).

The ALJ also based his reasoning on the fact that Dr. Netolicky's opinion relied on treatment predating the alleged onset date. Evidence from prior to an alleged onset date might have bearing.[18] Here, however, the medical records show Plaintiff improved over time—he had not been hospitalized during the relevant period, despite multiple prior hospitalizations. This supports the ALJ's reasoning that Dr. Netolicky's opinion carried less weight due to his reliance on Plaintiff's entire treatment history.

Finally, the ALJ found Dr. Netolicky's opinion was inconsistent with Plaintiff's reported activities. Since 2017, Plaintiff had written and published books, written and recorded music, and sold both. AR 41-47. He spent time with others, including watching movies, listening to music, and playing video games with friends, and he read, used

---

[17] *See **Julin v. Colvin***, 826 F.3d 1082, 1089 (holding ALJ could properly discount medical opinion that relied on claimant's subjective complaints where ALJ did not fully credit them).

[18] *See **Vandenboom v. Barnhart***, 421 F.3d 745, 750 (8th Cir. 2005) (ALJ could consider medical evidence from prior to the alleged onset date).

8

social media, and went bowling. AR 54, 236, 239, 248. Plaintiff also had a YouTube channel for his music and maintained a webpage where he shared his music and writings. AR 55. Plaintiff took trips during the relevant time period: to Wisconsin with his parents, to Six Flags with friends, and to Las Vegas where he participated in a poker tournament. AR 56. He also attended a college football game in Iowa City once a year with friends. AR 57-58. Plaintiff performed household chores and was able to shop in stores and go to coffee shops, cafes, and movie theaters alone and with others. AR 238-39, 246-47, 264-67.

"Although [Plaintiff] may disagree with the ALJ's conclusion, it is supported by substantial evidence."[19] I recommend finding the ALJ considered the proper factors in weighing Dr. Netolicky's opinion, and that substantial evidence supports the ALJ's decision on this issue.

### C. Development of the Record

Plaintiff asserts that the ALJ failed to fully develop the medical record. Plaintiff points to the ALJ discounting Dr. Netolicky's opinion and failure to obtain additional opinion evidence to support the ALJ's RFC determination. An ALJ has a duty to fully and fairly develop the record.[20] The ALJ need not obtain additional opinion evidence unless "a critical issue was underdeveloped such that the ALJ's decision was not supported by substantial evidence."[21] An ALJ's RFC determination must be supported

---

[19] ***Bowers v. Kijakazi***, 40 F.4th 872, 875 (8th Cir. 2022) (finding ALJ properly weighed the persuasiveness of medical opinion based on lack of objective medical evidence and inconsistency with other medical evidence).

[20] ***Combs v. Berryhill***, 878 F.3d 642, 646 (8th Cir. 2017).

[21] ***Id.***; ***Kruger v. Colvin***, No. C 13-3036-MWB, 2014 WL 2884038, at *2 (N.D. Iowa June 25, 2014) (adopting report and recommendation); *see also* **20 C.F.R. § 404.1519a(b), 416.919a(b)** (Social Security Administration may purchase a consultative examination "to try to resolve an

9

Case 1:24-cv-00016-CJW-KEM    Document 12    Filed 02/27/25    Page 9 of 14

by at least some medical evidence from a medical professional that "addresses the claimant's ability to function in the workplace."[22]

As discussed in the prior section, the ALJ did not find persuasive Dr. Netolicky's opinion.[23] Dr. Netolicky's opinion did not include any specific limitations as to Plaintiff's ability to interact with others (only that his abilities were moderately to markedly limited). The only other medical opinion in the record that addressed Plaintiff's mental limitations and abilities came from the state agency consultant, Dr. Fetter, during the reconsideration review. Dr. Fetter found Plaintiff had moderate limitations in his abilities to work in coordination with or in proximity to others and to interact with the public, coworkers, and peers. AR 101-02, 110-11. Dr. Fetter wrote:

> Due to irritability, [Plaintiff] would likely perform best in an environment with limited interpersonal demands. However, it appears he can maintain at least superficial social interaction when motivated to do so. The preponderance of the evidence supports that [Plaintiff] is capable of performing 3-4 step tasks, if he can work independent of others as needed.

AR 111. The ALJ found this opinion partially persuasive, noting it was internally consistent and generally consistent with Dr. Netolicky's treatment records. AR 20. The ALJ did not find the opinion more persuasive because it was "somewhat vague in terms of the claimant's retained capacity for social interactions" and "unclear what constitute[d] 'limited interpersonal demands,' [and] what type of motivation the claimant require[d] for 'superficial' social interactions." *Id*. The ALJ ultimately concluded Plaintiff's RFC

---

inconsistency in the evidence" or "when the evidence as a whole is insufficient" to resolve the claim).

[22] *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)).

[23] Though not exactly clear, it appears the ALJ did not fully rely on the portion of the opinion that found Plaintiff had marked limitations. This would be consistent with the ALJ's finding during step three that Plaintiff had moderate limitations in his interactions with others (AR 15) and including a limitation to only occasional interactions with others in the RFC determination.

was limited to "occasional interaction with supervisors, co-workers, and the general public." AR 16.

An ALJ need not include the exact limitations contained in a partially persuasive medical opinion so long as substantial evidence supports the ALJ's RFC determination.[24] The ALJ must also adequately explain an RFC determination; "the decisions about which limitations to include or exclude must be well-supported by evidence and explained."[25] Here, it is not clear from the ALJ's opinion why he limited the *quantity* of Plaintiff's interactions (only occasional) but not the *quality* of Plaintiff's interactions (to superficial interactions, for example). Courts have recognized that "'occasional' and 'superficial' are not coterminous"—one refers to quantity while the other refers to the quality of interactions.[26] The ALJ's opinion does not acknowledge or address this distinction. Dr. Fetter's opinion specifically found Plaintiff could maintain "superficial interactions when motivated" and was limited to "working independently of others as needed." Thus, Dr. Fetter found the most Plaintiff could do, at his most motivated, was maintain superficial interactions. The ALJ found that portion of the opinion "somewhat vague" and "unclear," but courts have recognized a limitation to superficial interactions as something

---

[24] *See McKinney v. O'Malley*, No. 23-3220, 2024 WL 1327965, at *1 (8th Cir. Mar. 28, 2024).

[25] *Lisa L. v. O'Malley*, Civ. No. 23-1138, 2024 WL 4682955, at *2 (D. Minn. Aug. 19, 2024). *see also **Jolene J.-D.***, No. 23-cv-2297, 2024 WL 3488001, at *7 (D. Minn. July 1, 2024) (acknowledging that court should not reweigh evidence in reconciling "the relationship between the substantial evidence in the record standard and the requirement that an ALJ explain how their decision logically flows from the record under caselaw and [the regulations]—particularly where it does not adopt some medical opinions and findings").

[26] *Eden v. Comm'r Soc. Security*, No. 18-CV-0076, 2019 WL 7666532, at *2 (N.D. Iowa June 6, 2019), *report and recommendation adopted*, 2019 WL 5260476 (Oct. 17, 2019); *see also Jolene J.-D.*, 2024 WL 3488001, at *5 (collecting cases) (noting the terms "brief," "superficial," and "infrequent" are not interchangeable); *Christopher W. v. O'Malley*, No. 23-cv-1978, 2024 WL 3761820, at *11 (D. Minn. May 31, 2024) (collecting cases) (recognizing distinction and that "limiting the *quantity* of time spent with an individual does not accommodate a limitation relating to the *quality* of the interactions—including a limitation to 'superficial' contact" (citation omitted)).

concrete the ALJ may incorporate into an RFC opinion. Here, the ALJ failed to seek clarification (from Dr. Fetter or the VE) or seek a consultative examination about Plaintiff's abilities to interact with others. Nor did the ALJ account for this type of limitation elsewhere in the RFC determination.[27]

No medical opinion supports the ALJ's social-interaction limitations.[28] And the record does not otherwise provide sufficient evidence for a limitation to only occasional interactions.[29] The medical records provide little insight into Plaintiff's ability to interact with others. Evidence of Plaintiff's activities (from both hearing testimony and function reports) shows he interacted with family and friends (including by playing video games, going bowling, and watching movies). AR 54-58, 236, 239, 248, 267. This evidence

---

[27] *See Lane v. O'Malley*, No. 23-1432, 2024 WL 302395, at *1 (8th Cir. 2024) (per curium) (ALJ's limitation to occasional (but not superficial) interactions was adequate because ALJ also limited claimant to "no teamwork, tandem, or public-facing work"); *Wyatt v. Kijakazi*, No. 23-1559, 2023 WL 6629761, at *1 (8th Cir. 2023) (per curium) (ALJ's decision to limit claimant to only occasional, incidental interaction with the public that included limitation of no teamwork or working in tandem with others sufficient where medical opinions found claimant capable of only brief, superficial, and infrequent interactions); *Christopher L.W.*, 2024 WL 3761820, at *12 (limitation to only occasional interaction with coworkers and supervisors and no work with the public and no tandem work sufficient to address quality of interactions where ALJ found partially persuasive medical opinion that plaintiff limited to only brief and superficial interactions; also found ALJ's decision supported by substantial evidence).

[28] *See Lauer*, 245 F.3d at 704-05 (rejecting the Commissioner's argument that the ALJ's RFC determination was based on the opinion of the non-examining reviewing consultant when the medical basis for the ALJ's decision was unclear and the non-examining reviewing consultant found fewer severe impairments than the ALJ); *cf. Peterson v. Colvin*, No. C14-4110-LTS, 2016 WL 1611480, at *11 (N.D. Iowa Apr. 21, 2016) (holding that no medical evidence supported the ALJ's RFC finding that the claimant could sit or stand for thirty minutes at a time when "no medical source or other source provided an opinion that [claimant] can sit or stand for more than 15 minutes at once").

[29] *Cf. Combs v. Berryhill*, 878 F.3d 642, 647 (8th Cir. 2017) (reversal required when ALJ relied on state agency consultant opinion at reconsideration, which was less limiting than the initial state agency opinion, based on the ALJ's "own inferences as to the relevance of the notations 'no acute distress' and 'normal movement of all extremities' in the treatment records," as "the relevance of this finding in terms of [Plaintiff's] ability to function in the workplace [wa]s not clear" from the treatment records).

12

does not necessarily establish that Plaintiff could interact with others at work occasionally without limitation on the quality of those interactions. Indeed, many of Plaintiff's activities—such as recording music, publishing books, maintaining a YouTube channel, and working on a webpage—are not inconsistent with a limitation to only superficial interactions and working independently.

In sum, the ALJ's decision does not rely on some medical evidence about Plaintiff's ability to interact with others, the limitation does not appear to be otherwise supported by the record, and the ALJ failed to provide adequate explanation to enable this court to fully review the decision. "Where the ALJ fails to clearly articulate the rationale linking the evidence to the findings, a reviewing court is left to impermissibly guess the ALJ's reasoning or manufacture justifications that the ALJ did not provide.[30]

I recommend finding the ALJ to failed to properly explain the RFC determination. The ALJ may need to further develop the record on Plaintiff's ability to interact with others.

### III. CONCLUSION

The court recommends **reversing** the decision of the Social Security Administration and **remanding** for further proceedings.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the

---

[30] *Lisa L.*, 2024 WL 4682955, at *2 (finding ALJ did not provide sufficient explanation for excluding limitation to "brief" interaction, even though RFC was limited to occasional and superficial interactions); *see also* ***Jolene J-D.***, 2024 WL 3488001, at *5-6 (holding ALJ failed to sufficiently explain omission of "brief" and "superficial" limitations where medical opinions found claimant was limited to "brief," "superficial," and "infrequent" interactions and ALJ only limited claimant to "occasional" interactions).

13

objections.[31] Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[32]

    **DATED** February 27, 2025.

*Kelly K.E. Mahoney* (signature)
Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa

---

[31] **Fed. R. Civ. P. 72**.

[32] *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).